IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Robert Golden, et al.,            Case No. 3:05 CV 7052

       Plaintiffs,          MEMORANDUM OPINION
                                  AND ORDER

     -vs-
                                  JUDGE JACK ZOUHARY

Rossford Exempted Village School
  District, et al.,

       Defendants.


This is a civil liberties action. Plaintiffs Robert Golden, Mark Montgomery, Travis Montgomery, Angela Strausbaugh, Timothy Strausbaugh, and Douglas Strausbaugh are members or representatives of members of a self-described Christian musical band Pawn Musical Ministries (Pawn, collectively). Plaintiffs brought this action against the Rossford Exempted Village School District (the School District), the Rossford Exempted School District Board of Education (the School Board), and Luci Gernot, both individually and in her capacity as Superintendent of the School District, for alleged violations of Pawn's rights under both the United States and Ohio Constitutions.

Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1367.

Pending are Counter-Motions for Summary Judgment. For the following reasons, Defendants' Motion is granted, and Plaintiffs' Motion is denied, with respect to the federal claims; and the state claims will be dismissed for lack of subject matter of jurisdiction.

**BACKGROUND**

Pawn's music concerns mainly Christian themes with concordant lyrics. Pawn's manager is David Kleeberger, the father of a member of Pawn who is not a party to this action. Kleeberger is also a member of the School Board. In November 2004, Kleeberger's son and Timothy Strausbaugh, both students at Rossford High School (the School), approached the School's Principal, Ronald Grimm, about performing at a school-wide assembly. Kleeberger followed up on this initial contact by e-mailing Superintendent Gernot on November 30 and asking: "Before this goes any further I would want you[r] opinion on the matter. It is a Christian band bu[t] they do not need to talk about Christ openly, however the lyrics do contain references to Christ. I thought it might be a neat student activity if left optional . . ." Gernot's reply initially supported Pawn's performance:

> What are your thoughts about a Pawn concert? I believe that they will be received well. Most of the chorale literature is seeped in Christianity. The best music for large choirs is written for the churches. Everyone knows it is for entertainment purposes and not to be religious. That's how I would aproach your son's band. I had a tremendous problem with this when I worked in Sylvania. They had a fantasitc concert and after any concert I would have a group of Jewish, Moslem, and agnostic students in my office complaining vigorously. I always defended the arts. They even had a problem with Hamlet. My friend taught AP English and did not have one Christian in her class. She had to do a lot of explaining!!

Kleeberger conveyed to Grimm that Gernot gave her permission, and arrangements began for Pawn to perform at a School assembly on December 21, two days before Christmas break. Grimm assigned no theme to the performance, leaving that to Kleeberger, who at some point decided that the theme would be "anti-drug." The assembly was to occur within the School building, during instructional time, and was to be supervised by the School's faculty and staff as part of their regular responsibilities. Students not wishing to attend the performance were confined to the School cafeteria

2

under faculty supervision. The School limited participation in the assembly to only one performer, Pawn.

In early December, Grimm received a phone call from a parent complaining about the scheduled performance, specifically referencing Pawn's religious identity and potential Establishment Clause issues. Grimm, in response, informed both Kleeberger and Gernot. On Friday, December 10, 2004, Kleeberger talked with James Rossler, the Board treasurer, and asked Rossler to seek advice from the Board's legal counsel on the matter.

In the course of the inquiry, both Gernot and the Board's counsel viewed Pawn's website which contained a number of religious statements including the following:

1. Pawn's purpose was to "spread the word of God to those who do not know him, and in doing so, give people the love of Christ."

2. "The band's messages are youth oriented to try and reach Gen X and Y'ers, for the most part, but the Word of God is ageless and will reach all those who hear it."

3. "All of the band's music has a Christian message . . . Some of the band's members have made it clear that the music's first purpose is to deliver a message."

On Tuesday, December 14, 2004, Rossler had a followup meeting with Kleeberger during which they spoke with the Board's legal counsel who advised that the School should not proceed with the Pawn concert. Kleeberger replied that he understood, that he did not want to get the School District in trouble, and that he would just "pull the plug" on the concert.

Consistent with that meeting, and the advice of the School District's legal counsel, Gernot had decided to cancel Pawn's performance two days earlier. On December 14, however, a Toledo Blade reporter contacted Gernot to inquire about the cancelled concert. Gernot was surprised by the phone

3

call, as she had not yet informed any School personnel of her decision. The following day the front page of that newspaper included an article detailing the cancellation of the concert.

At a School Board meeting several days later, Gernot explained her decision. She stated that the School District feared Pawn would promote their personal Christian views during an in-school assembly. Gernot further noted that the School Board would consider allowing Pawn to perform in an after-school setting, rather than at an in-school assembly. During that meeting, Kleeberger publicly disagreed with Gernot's decision. He asked her to appear on Fox News with him, noting "together we can bring religion back into the schools." That evening, after the meeting, Kleeberger telephoned Gernot and asked her to speak with Travis Montgomery, a band member's father. Montgomery reiterated Kleeberger's points about the importance of returning religious values back into public schools.

Neither party disputes that the basis for canceling Pawn's performance was a fear that it might result in a violation of the First Amendment's Establishment Clause. Pawn attempted to assure both the School Board and Gernot that their performance would not include proselytizing conduct, but neither reversed their positions. Plaintiffs contend that Defendants' fears were unfounded, and that Defendants had been assured that any performance would be free of religious influences and focus only on an "anti-drug" message.

After the School Board cancelled Pawn's performance, students from a second band, Blind Ambition, asked to fill the now vacant slot in the assembly. Grimm investigated, found that this was a secular band without a religious theme or mission, and informed Gernot that Blind Ambition offered to perform in Pawn's place. Gernot raised no objection as long as "the band did not have a mission . . . of a religious nature."

4

**STANDARD OF REVIEW**

Summary judgment is appropriate where the evidence presented in the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court draws all justifiable inferences from the evidence presented in the record in the light most favorable to the non-moving party. *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 245 (6th Cir. 1997). The moving party bears the initial burden of informing the District Court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323. Once the moving party satisfies that burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

**DISCUSSION**

Plaintiffs contend Defendants violated their free speech and equal protection rights under both the United States and Ohio Constitutions. Because the federal claims fail as a matter of law, the Court shall not exercise jurisdiction over the state claims. 28 U.S.C. §1367.

**Freedom of Speech**

Pawn asserts that the School District, the School Board, and Gernot cancelled the band's performance because they disapproved of its Christian theme. Because in many circumstances the government must remain neutral with respect to the content, viewpoint, and subject matter of speakers' expressions, Plaintiffs argue Defendants' actions constitute a violation of their free speech

5

rights under the First Amendment of the United States Constitution. *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 131 (2001).

The band's arguments fail, however, because they misapprehend the nature of the School assembly. This is not a case about the state discriminating against speech and religion, but rather about the state having control over who speaks on its behalf.

While state actors need not remain viewpoint neutral in all situations, once a school opens its facilities as a forum for public debate and permits a variety of speakers from different backgrounds to address an issue, it may not discriminate on the basis of substance. *Rosenberger v. Rector and Visitors of Univ. of Virginia*, 515 U.S. 819, 831 (1995). Put colloquially, the state does not need to lend out its microphone to let private actors espouse their own views on their own behalf, but once the state does, it cannot pick and choose among them. Plaintiffs rely on this line of cases which are inapplicable to the Pawn performance. See *id.*; *Widmar v. Vincent*, 454 U.S. 263 (1981); *Lamb's Chapel v. Center Moriches School District*, 508 US. 384 (1993).

Rather, when there is no public forum and "the government appropriates public funds to promote a particular policy of its own[,] it is entitled to say what it wishes." *Rosenberger*, 515 U.S. at 833. To continue the analogy, the state is entitled to lend out its microphone to whomever it wishes to speak on the state's behalf. In that situation, the state need not remain viewpoint neutral.

In this case, the School assembly was not a "forum" of any kind and, accordingly, not subject to the requirements of viewpoint neutrality. A "forum" only exists, for First Amendment purposes, where there is a government purpose to "facilitate private speech," *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 542 (2001), or to promote the "free and open exchange of ideas." *Bd. of Regents of Univ. of Wis. Sys. v. Southworth*, 529 U.S. 217, 229 (2000). A "forum" may also arise when the

school "expends funds to encourage a diversity of views from private speakers." *Rosenberg*, 515 U.S. at 834. In contrast, "[t]he government does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 802 (1985). "Hence, school facilities may be deemed to be public forums only if school authorities have 'by policy or by practice' opened those facilities 'for indiscriminate use by the general public' or by some segment of the public, such as student organizations." *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 267 (1988) (quoting *Perry Edn. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 47 (1983) (internal citation omitted)).

Here, none of those circumstances existed. Defendants did not open up the school as a space for public debate, but rather intended only to present a single performer at an assembly before the December holidays.

Because the assembly was not a forum of any kind, Defendants were entitled to exercise editorial control over Pawn's potential performance because the audience might likely ascribe the band's views to the School, School Board, and School District. "Educators are entitled to exercise greater control [in certain circumstances] to assure . . . that the views of the individual speaker are not erroneously attributed to the school." *Hazelwood*, 484 U.S. at 271; *see also Downs v. Los Angeles Unified Sch. Dist.*, 228 F.3d 1003, 1013 (9th Cir. 2000) ("[W]hen a public high school is the speaker, its control of its own speech is not subject to the constraints of constitutional safeguards and forum analysis, but instead is measured by practical considerations applicable to any individual's choice of how to convey oneself: among other things, content, timing, and purpose."). Those circumstances include "school-sponsored publications, theatrical productions, and other expressive activities that

7

students, parents, and members of the public might reasonably perceive to bear the imprimatur of the school." *Id.*

Here, a student assembly, held during school hours, with only one musical performer approved by the Principal, bears the imprimatur of the School. Consequently, in these circumstances, "educators do not offend the First Amendment by exercising editorial control over the style and content of student speech . . . so long as their actions are reasonably related to legitimate pedagogical concerns." *Id.* at 273. Plaintiffs stress in their pleadings that the assembly was for "entertainment" purposes only, but "[t]he universe of legitimate pedagogical concerns is by no means confined to the academic . . . [and] unless they are beyond the constitutional pale we have no warrant to interfere with them." *Poling v. Murphy*, 872 F.2d 757, 762 (6th Cir. 1989); *see also Fleming v. Jefferson C'ty Sch. Dist. R-1,* 298 F.3d 918, 923 (10th Cir. 2002) (Hazelwood v. Kuhlmeier is not limited "to activities conducted as part of the school curriculum . . . [but also] activities that might reasonably be perceived to bear the imprimatur of the school and that involve pedagogical concerns.").

Plaintiffs rely heavily on cases restricting viewpoint discrimination in state-created forums where viewpoint neutrality is required by the courts. See *Rosenberger*, 515 U.S. 819; *Widmar*, 454 U.S. 623; *Lamb's Chapel*, 508 U.S. 384. However, those cases simply do not apply to the case at hand where the state creates no forum. Plaintiffs go to great lengths to suggest that Pawn's performance would not have resulted in an Establishment Clause violation,[1] but those arguments also

---

[1] Given the contents of Pawn's website and Kleeberger's comments about reintroducing religion into public school, it seems Defendants had at least some plausible concerns. Moreover, school officials are entitled to some leeway in confronting these issues. *Philips v. Oxford Separate Mun. Sch. Dist.*, 314 F. Supp. 2d 643, 648 (N.D.Miss. 2003).

8

miss the point. Even if Pawn's performance posed no Establishment Clause issue whatsoever, Defendants were entitled to exercise editorial control where no forum existed.

Accordingly, because the assembly was not a forum and audience members could likely draw the conclusion that Pawn spoke not only for itself, but for the School, School District, and School Board, Defendants' discretion with respect to the performance was not subject to the requirements of viewpoint neutrality. Pawn's free speech claims are, consequently, without merit.

### Equal Protection

Plaintiffs also allege equal protection violations, asserting that Defendants discriminated against them because of their religious identity. Those claims likewise fail for similar reasons.

Because audience members might assume the School, School Board, and School District endorse the assembly performer's message, Defendants were entitled to select whom they wished to represent them. Where the speech is government speech, the government is entitled to exercise control over its presentation, *Hazelwood*, 484 U.S. at 267, and is not subject to the strictures of the Equal Protection Clause, but only to the requirements of the Establishment Clause. *Simpson v. Chesterfield County Bd. of Sup'rs*, 404 F.3d 276, 288 (4th Cir. 2005). Defendants were entitled to discriminate against Plaintiffs because of their Christian religious identity precisely because the assembly audience might associate that identity with the School, School District, and School Board.

Further, even if a prima facie case for Plaintiffs' equal protection claim might lie here, a compelling state interest, avoiding a potential Establishment Clause violation, justifies Defendants' action. *Sloan v. Lemon*, 413 U.S. 825, 834 (1973) (existence of Establishment Clause violation bars Equal Protection claim); *see also Bannon v. Sch. Dist. of Palm Beach C'ty*, 387 F.3d 1208, 1216 (10th Cir. 2004) (school had the right to restrict students free speech rights by excluding religious symbols

from permanent school-sponsored mural because such symbolic speech could be attributed to the school itself, resulting in Establishment Clause violation).

Moreover, the case law does not require the state to have conclusive, overwhelming evidence of an impending Establishment Clause violation. Rather, sufficient justifying circumstances exist where there is a "realistic danger that the community would think that the District was endorsing religion or any particular creed." *Good News Club*, 533 U.S. at 113; (quoting *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 395 (1993)); *see also Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 428 F.3d 223, 236 (6th Cir. 2005) (legitimate concern with possible Establishment Clause violation is sufficient) (citing *Webster v. New Lenox Sch. Dist. No. 122*, 917 F.2d 1004, 1008 (7th Cir.1990)).

Here, Defendants had both "realistic" and "legitimate" concerns. Pawn is an avowedly Christian band whose musical lyrics reflect that religious tradition. Though Kleeberger promised the band would refrain from any prosletyzing or evangelical behavior at the performance, earlier he had publically expressed his desire that the assembly reintroduce religion into the public schools. In any event, his later assurances do not render Defendants' concerns either unrealistic or illegitimate. Accordingly, Plaintiffs' equal protection claims are without merit.

## CONCLUSION

For the foregoing reasons, the Court orders that:

1. Plaintiffs' Motion for Partial Summary Judgment is denied (Docket No. 14);

2. Defendants' Motion for Summary Judgment is granted (Docket No. 17); and

3. Plaintiffs' state law claims are dismissed without prejudice.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE
July 31, 2006